UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ABRAHAM MOLABOLA LAGARDE, Plaintiff, v. NANCY A. BERRYHILL, Acting Commissioner of Social Security, Defendant. | Case No.: 18-cv-00811-LAB-JLB<br><br>**REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW OF FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**<br><br>**[ECF No. 17]** |
|---|---|

This Report and Recommendation is submitted to the Honorable Larry Alan Burns, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

On April 27, 2018, plaintiff Abraham Molabola Lagarde filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits. (ECF No. 1.)

Now pending before the Court and ready for decision is the parties' Joint Motion for Judicial Review of Final Decision of the Commissioner of Social Security. (ECF No. 17.)

For the reasons set forth herein, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and that this action be dismissed.

## I. PROCEDURAL BACKGROUND

On September 14, 2015, plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning January 1, 2015. (Certified Administrative Record ["AR"] 168-71.) After his application was denied initially and upon reconsideration (AR 99-103, 109-14), plaintiff requested an administrative hearing before an administrative law judge ("ALJ") (AR 117-18). An administrative hearing was held on August 2, 2017. Plaintiff appeared at the hearing with counsel, and testimony was taken from plaintiff and a vocational expert ("VE"). (AR 37-73.)

As reflected in his October 27, 2017 hearing decision, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, from his alleged onset date through the date of the decision. (AR 15-33.) The ALJ's decision became the final decision of the Commissioner on February 22, 2018, when the Appeals Council denied plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2015, his alleged onset date. (AR 20.)

At Step Two, the ALJ found that that plaintiff had the following severe impairments: osteoarthritis of the lumbar spine; internal hemorrhoids; and, an adjustment disorder with depressive and anxiety features. (AR 20.)

At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR 20-21.)

///

Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform the full range of unskilled, light level work, but such work could not require:

> lifting more than 20 pounds at a time, on more than an occasional basis; lifting and carrying articles weighing more than 10 pounds, on more than an occasional basis; standing or walking more than 15 minutes at one time, and no more than 6 total hours in an 8-hour workday; sitting more than 15 minutes at one time, and no more than 2 total hours in an 8-hour workday; more than occasional stooping, bending, twisting, or squatting; working on the floor (e.g. kneeling, crawling, or crouching); ascending or descending full flights of stairs (but a few steps up or down not precluded); [and] overhead lifting or overhead reaching with either extremity.

(AR 21-22.)

Plaintiff also could not work "in an area without a restroom nearby, for quick access," and must have "the option to take, in addition to standard restroom breaks and lunch, 1-2 additional restroom breaks in the a.m. and 1-2 additional restroom breaks in the p.m., of about 5 minutes in duration for each such break." (AR 22.) In addition, plaintiff could not work "in other than a low stress environment," which means: (1) no interaction with the general public and no working with crowds of co-workers; and (2) only "occasional" verbal interaction with supervisors and co-workers. (AR 22.) Further, plaintiff could work at "no more than a low concentration, which means the ability to be alert and attentive to only routine unskilled work tasks; and work at no more than a low memory level," which means "the ability to understand, remember, and carry out only 'simple' work instructions." (AR 22.)

For purposes of a Step Four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with plaintiff's vocational profile would not be able to perform the requirements of plaintiff's past relevant work as actually or generally performed. (AR 26.)

The ALJ then proceeded to Step Five of the sequential evaluation process. As of the alleged onset date, the ALJ classified plaintiff as a younger individual who subsequently changed age category to an individual closely approaching advanced age, with at least a

high school education. (AR 26.) Based on the VE's testimony that a hypothetical person with plaintiff's vocational profile could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, solderer, marker, and assembler), the ALJ found that plaintiff was not disabled. (AR 26-28.)

## III. SOLE ISSUE IN DISPUTE

The sole issue in dispute in this case is whether the ALJ satisfied his burden at Step Five in determining that plaintiff was able to do other work. Specifically, plaintiff contends that the ALJ erred in relying on the testimony of the VE that plaintiff could perform other work because the VE's testimony was inconsistent with the ALJ's hypothetical. (*See* ECF No. 17 at 6-7.) In response, the Commissioner contends that the ALJ properly relied on the VE's opinion that the plaintiff could perform other work based on the hypothetical given. (*Id.* at 9.)

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

///
///
///

4

18-cv-00811-LAB (JLB)

## V. DISCUSSION

### A. Legal Standard

At step five of the sequential evaluation process, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (alterations in original) (quoting *Johnson v. Shalala,* 60 F.3d 1428, 1432 (9th Cir. 1995)) (citing 20 C.F.R. § 416.920(g)). In making a disability determination at this step, the ALJ relies primarily on the Dictionary of Occupational Titles ("DOT") for "information about the requirements of work in the national economy." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

The DOT is "a resource compiled by the Department of Labor that details the specific requirements for different occupations." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016). The "DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces." Social Security Ruling ("SSR")[1] 00-4p, 2000 WL 1898704, at *2 (2000). The term "occupation," as used in the DOT, refers to the collective description of those jobs, and each occupation represents numerous jobs. *Id.*; *see also Gutierrez*, 844 F.3d at 807. As such, the DOT "lists *maximum requirements* of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.* at *3 (emphasis added).

In addition to the DOT, the ALJ "uses testimony from [VEs] to obtain occupational evidence." *Massachi*, 486 F.3d at 1153; *see also Zavalin*, 778 F.3d at 846. Generally, the VE's testimony should be consistent with the DOT. *See* SSR 00-4p, 2000 WL 1898704, at *2; *Massachi*, 486 F.3d at 1153. But when conflicts occur, neither the DOT nor the VE's

---

[1] "SSRs reflect the official interpretation of the [Social Security Administration] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n. 2 (9th Cir. 2005)).

evidence automatically trumps. *Massachi*, 486 F.3d at 1153 (citing SSR 00-4p, 2000 WL 1898704, at *2). "Thus, the ALJ must first determine whether a conflict exists." *Id.*

"When there is an apparent conflict between the [VE]'s testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi*, 486 F.3d at 1153-54). The ALJ must ask the VE whether his or her testimony conflicts with the DOT. *Massachi*, 486 F.3d at 1153-54; SSR 00-4p, 2000 WL 1898704, at *4. If it does conflict, "the ALJ must then determine whether the [VE]'s explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.* at 1153. A failure to ask the VE whether his or her testimony conflicts with the DOT may be harmless error if there is no conflict, or if the VE provides "sufficient support for [his or] her conclusion so as to justify any potential conflicts." *Id.* at 1154, n.19; *see also Hann v. Colvin*, No. 12-cv-06234, 2014 WL 1382063, at *15 (N.D. Cal. Mar. 28, 2014).

**B. Analysis**

    1. <u>The ALJ's Hypothetical</u>

During the administrative hearing, the ALJ first posed the following hypothetical to the VE:

> Okay. Let's assume then the following [RFC] for an individual of the claimant's age, education, past relevant work as you've identified, the ability to handle for the first hypothetical **light, unskilled work , lifting 20 pounds occasionally, lifting and then carrying articles weighing no more than 10 pounds occasionally.** Standing or walking 45 minutes at a time for a total of six hours in an eight-hour day, sitting 45 minutes at a time for a total of two hours in an eight-hour day, no more than occasional stooping, bending, twisting, or squatting, no work on the floor, no kneeling, crawling, or crouching, no climbing or descending full flights of stairs. But a few steps up or down would be okay. No overhead lifting or reaching with either extremity. He would have to have an area to work in with a restroom nearby for quick access and must have the option to take in addition to breaks and lunch, one to two additional breaks in the morning to go to the restroom of five minutes each, and one to two additional breaks in the afternoon to go to

> the restroom at five minutes each. That would be a total on bad days of 40 minutes -- let's see, 20 minutes off-task for the day. Work would also have to be unskilled, working in no more than a low-stress level, unskilled work environment, which means working with the general public would be none, working with crowds of coworkers would not be allowed, and only occasional verbal interaction with supervisors and coworkers. Work would also have to be unskilled and lower in concentration, which means the ability to be alert and attentive to only routine, unskilled work tasks. And work would have to be low skilled -- I mean, unskilled and lower in memory, which just means he would have the ability to remember, understand, and carry out only simple work instructions. . . .

(AR 64-66 (emphasis added).)

This hypothetical includes all of plaintiff's RFC limitations, with the exception of the more restrictive limitations identified by the ALJ with respect to plaintiff's ability to stand, walk, and/or sit. (*Compare* AR 21-22 *with* AR 64-66.) In response to this hypothetical, the VE gave three examples of occupations such a hypothetical person could perform: assembler, solderer, and marker. (AR 66-67.) With respect to each occupation, the VE testified that she would erode the numbers available in the national economy by approximately 30 percent to allow for the factors in the hypothetical. (*See id.*)

The ALJ then proposed a second, third, and fourth hypothetical. (AR 67.) In his second hypothetical, the ALJ stated, "It's the same as the first except he could only stand 30 minutes at a time and only sit 30 minutes at a time." (*Id.*) The ALJ then asked the VE, "Would that change your opinion or your answers at all?" (*Id.*) The VE responded, "No." (*Id.*)

In his third hypothetical, the ALJ stated, "[It] is the same as the first one, except he could only stand 15 minutes at a time and only sit 15 minutes at a time." (*Id.*) The ALJ then asked the VE, "Would that change your previous answers?" (*Id.*) The VE responded, "I would probably further erode if standing and sitting are limited to 15 minutes. I would erode by a total of 50 percent, maybe even 60 percent." (*Id.*)

///
///

In his fourth hypothetical, the ALJ stated, "[It] is the same as the last one that I just gave you, except he could only lift 10 pounds occasionally and only lift and carry five pounds occasionally." (*Id.*) The ALJ then asked the VE, "What would happen to your previous answer?" (*Id.*) The VE responded, "Those jobs are going to be eliminated." (*Id.*)

The ALJ's third hypothetical closely matches[2] the RFC in his decision. The first two hypotheticals did not contain all of the restrictions, and the fourth hypothetical was substantively more restrictive than the RFC.

In the Joint Motion, plaintiff does not dispute that the third hypothetical posed to the VE reflects all of the limitations found credible by the ALJ and supported by substantial evidence in the record. (*See* ECF No. 17 at 6.) Ordinarily, the inquiry would end here, as the ALJ would be entitled to rely on the VE's testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (finding that the ALJ's reliance on testimony the VE gave in response to the hypothetical was proper where the hypothetical that the ALJ posed to the VE contained all of the limitations the ALJ found credible and supported by substantial evidence in the record). But plaintiff challenges the ALJ's finding that plaintiff could perform the occupations of assembler, solderer, and marker, on the basis the ALJ did not adequately resolve the discrepancy between the VE's opinion and the DOT. The Court addresses this argument below.

### 2. Resolving the Conflict

Each of the occupations identified by the VE are classified in the DOT as "light work." *See* DICOT 209.587-034 (marker), *available at* 1991 WL 671802; DICOT 729.687-010 (assembler), *available at* 1991 WL 679733; DICOT 813.684-022 (solderer), *available at* 1991 WL 681592. Light work, as defined by 20 C.F.R. § 404.1567(b), "involves . . . frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 1567(b). Thus, there was an apparent conflict between the VE's testimony that a person

---

[2] The Court notes that the ALJ's hypothetical is slightly more restrictive than plaintiff's RFC with respect to lifting and carrying. (*See* AR 21, 64-65.)

with plaintiff's RFC could perform the work of these three positions and the DOT, specifically with respect to the lifting or carrying of objects up to 10 pounds. The ALJ was required to reconcile this conflict. *See Zavalin*, 778 F.3d at 846.

An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. *Massachi*, 486 F.3d at 1152. Further, an ALJ must ask follow up questions of a VE when the expert's testimony is either obviously or apparently contrary to the DOT, and determine whether the VE's explanation for the conflict is reasonable, and whether a basis exists for relying on the expert rather than the DOT. *See Gutierrez*, 844 F.3d at 808; *Massachi*, 486 F.3d at 1153. "The requirement for an ALJ to ask follow up questions is fact-dependent." *Gutierrez*, 844 F.3d at 808.

Here, the ALJ specifically asked: "And if I were to look up the DOT and [SCO] and read how these jobs were performed, I wouldn't see mentioned a sit/stand option and the other details I gave you physically and mentally, would I?" (AR 71.) The VE responded, "No." (*Id.*) The ALJ then followed up and asked, "And despite that, you've taken that into consideration when you selected these jobs and reduce[d] their numbers for us?" (*Id.*) The VE responded, "Yes." (*Id.*) The ALJ then asked, "And this is all based on your education and experience in the field? (*Id.*) The VE responded, "Yes." (*Id.*)

In his decision, the ALJ explained his determination as follows:

> At the hearing, the [VE] was asked if his vocational testimony provided at the hearing conflicted, in any way, with the Dictionary of Occupational Titles (D.O.T.) and the Selected Characteristics Occupational Outlook Handbook (S.C.O). The expert responded by stating that the D.O.T. and S.C.O. does not mention, in its description of the above cited jobs, all of the limitations given in the [RFC] (e.g. the postural changes noted and the detailed mental limitations and/or the detailed physical limitations noted). The expert testified that based on the expert's education and experience, such jobs do allow for such limitations, in the reduced numbers noted above. The expert's resume is found in the file (Exhibit 10E). No contrary evidence was presented. Therefore, the opinions of the expert are accepted and found to be appropriate departures from the D.O.T. (SSR 00-4p).

(AR 27.)

Based on the foregoing, the Court finds that the ALJ met his burden at Step Five. The ALJ recognized the conflict, and then asked the VE whether she took the conflict into consideration when she selected the three occupations of assembler, solderer, and marker and reduced their numbers. She stated that she had done so. The ALJ then asked whether her departure was based on her education and experience in the field. The VE responded that she had taken everything into consideration and her responses were based on her education and experience. In resolving the conflict, the ALJ specifically noted the VE's qualifications by reference to the VE's resume. (AR 27.) The ALJ also noted that no contrary evidence was presented. (*Id.*) The Court finds this sufficient. *See Bayliss*, 427 F.3d at 1218 ("A VE's recognized expertise provides the necessary foundation for his or her testimony."); *Johnson*, 60 F.3d at 1435 ("[E]xpert testimony may properly be used to show that the particular jobs, [however classified in the DOT], may be ones that a particular claimant can perform. In fact it seems an eminently appropriate use of the [VE's] knowledge and experience."); *see also* SSR 00-4p, 2000 WL 1898704, at *2-3 (noting that a VE "may be able to provide more specific information about jobs or occupations than the DOT" and may have "information about a particular job's requirements" based on the VE's "experience in job placement or career counseling").

In the Joint Motion, plaintiff contends that the VE did not provide "any rational[e] for her departure from the DOT," arguing that "[i]t appears the [VE] simply misheard the ALJ in regards to the occasional lifting of 10 pounds." (ECF No. 17 at 7.) Plaintiff contends that the VE only testified that she was reducing numbers based on other limitations in the hypothetical, and not with respect to the occasional lifting of 10 pounds. (*Id.*) The Court disagrees with plaintiff's characterization of the testimony. The VE's testimony does not suggest that she misheard the ALJ or was confused by his questions.

Moreover, the Court finds that frequent lifting of 10 pounds is not such a common and obvious part of being an assembler, solderer, or marker that the ALJ should have questioned the VE more closely before concluding that plaintiff could perform such work.

10

18-cv-00811-LAB (JLB)

*See Gutierrez*, 844 F.3d at 807; *see also* DICOT 209.587-034; DICOT 729.687-010; DICOT 813.684-022.[3] The DOT's description of each occupation does not suggest an

---

[3] In the DOT, the occupation of "marker" is defined as follows:

> Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine . . . .

DICOT 209.587-034. Moreover, the occupation of "assembler" is defined as follows:

> Assembles mechanical parts of electrical equipment, such as light sockets, switches, terminal boards, and plugging devices: Fits together parts, such as socket bases, shafts, contact fingers, and springs, in specified sequence, using fixtures, screwdrivers, and air nut runners. Tests actions of moving parts and listens for unusual sounds to detect defective parts or faulty operation. Verifies completed assembly against pictorial drawings. May be designated according to type of equipment assembled . . . .

DICOT 729.687-010. Lastly, the occupation of "solderer" is defined as follows:

> Solders together components of metal products on production line, using hand soldering iron and soft solder: Dips workpieces into chemical solution or brushes or powders flux along joints to remove impurities. Places workpieces into fixtures or manually holds them together at designated point. Plunges soldering iron into chemical to clean tip. Positions tip of heated soldering iron and wire or bar of solder to joint until solder melts and seeps into joint. Guides iron and solder along seams. Removes workpiece when color indicates that solder has cooled and bonded workpieces together. May sweat together workpieces coated with solder. May solder with self-fluxing solder. May adjust controls of gas flame or electric induction coils to specified point on dial to heat soldering iron.

DICOT 813.684-022.

11
18-cv-00811-LAB (JLB)

irreconcilable conflict between these positions and the VE's testimony. Notably, although "light work" is defined in Section 404.1567(b) as involving "frequent lifting or carrying of objects weighing up to 10 pounds," that same section, as well as the DOT "strength" descriptions for each of the occupations identified by the VE, also state that for these types of positions the weight lifted "may be very little" or a "may only be a negligible amount." *See* 20 C.F.R. § 1567(b); DICOT 209.587-034; DICOT 729.687-010; DICOT 813.684-022.

Accordingly, the Court finds that the ALJ was entitled to rely on the VE's testimony, and did not err in his Step Five determination.

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**, and that this action be dismissed with prejudice.

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections no later than **March 6, 2019**. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections no later than **March 20, 2019**. *Id.*

**IT IS SO ORDERED.**

Dated: February 19, 2019

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge